PARSONS v. COMMERCIAL NAT. BANK IN SHREVEPORT.

Civil Action No. 83.

District Court, W. D. Louisiana, Shreveport Division.

March 13, 1946.

Monroe & Lemann, of New Orleans, La., and Foster, Hall & Smith, of Shreveport, La., for plaintiff.

Lee & Lee, Cook, Cook & Egan, Herold, Cousin & Herold, and Jos. Barksdale, all of Shreveport, La., for defendant.

DAWKINS, District Judge.

The nature of this case is fully set forth in opinions by this court reported in Leslie v. Commercial Nat. Bank in Shreveport, 28 F.Supp. page 927 and Rawlings v. Commercial Nat. Bank in Shreveport, 44 F.Supp. page 5; and in those of the Court of Appeals for this circuit found in 144 F.2d 231 and 145 F.2d 191.

The mandate of the Court of Appeals declares and directs:

"It is now here ordered and adjudged by this Court, that the judgment of the said District Court appealed from in this cause be, and the same is hereby, reversed; and that this cause be and it is hereby remanded generally for further proceedings not inconsistent with the opinion of this Court;

"it is further ordered and adjudged that the appellant, Commercial National Bank in Shreveport, is condemned to pay three-fourths of the costs of this cause in this Court, and the appellee, R. C. Parsons, Receiver of Commercial National Bank of Shreveport, is condemned to pay one-fourth of the costs of this cause in this court, for which execution may be issued out of the said District Court."

Counsel for defendant have now moved to amend the answer previously filed and upon which the case was tried on the grounds that (a) there "were errors in the original confection of the contract, which errors defendant desired to plead"; (b) "by its opinion the Court of Appeals has injected issues into the case which did not exist on the prior trial and it is necessary that defendant plead the facts in reference thereto"; and (c) "in order that the court may be fully informed as to all the facts and circumstances surrounding the confection and execution of the contract in question * * *."

The proposed amendment is in reality a substitution for it takes up consecutively each of the nineteen articles of the complaint and makes answer to all of them, adding to or enlarging the pleading as to some. Having done this, it then goes on to plead further defenses specifically. Allegations are made at length as to the contentions and circumstances which preceded over a period of years and finally led up to the transfer or reorganization under the contract of December 3, 1932, including the ratification of said contract by more than three-fourths of the stock of the old bank after certain amendments thereof had been made on January 10, 1934. The principal amendment of the said contract of that date was the elimination of any charge or fee against the old bank for the administration of Class "B" assets, and the proposed amendment to the answer on that score is now found in Article 21 of the proposal, which avers:

"Among other amendments it was recited that Paragraph 5 of the original contract of December 3, 1932, did not truly state the agreement between the parties but was based upon error, and that the true agreement was that the cost of administering Class 'B' assets should fall entirely upon the defendant. This amendment was inserted solely because it was thought by all of the parties and agreed between them, that the six per cent, termed 'interest' in the contract as drawn, on Class 'B' assets, together with the other considerations therein given by the Old Bank, constituted sufficient compensation to the New Bank for its administration of Class 'B' assets and for the other obligations undertaken by it.

However, in Article 24 of the proposed amendment it is alleged:

"Defendant further shows that the parties to the contract did not intend to provide that the cost of administering Class 'B' assets should fall entirely upon defendant; that the true intent of the parties was that every cost of administering both Class 'B' and Class 'C' assets, as well as every other expense incident to the execution of the contract, was to be borne by the Old Bank. If therefore the contract as amended can be construed as placing upon the defendant the burden of bearing the costs of administering Class 'B' assets, then the contract was drawn in error and should be reformed to set forth the true intention as herein alleged."

With respect to the note for $1,000,000, the proposed amendment is covered by Articles 25 and 26 which allege:

"It further shows that it was the intentions of the parties that as a part of the consideration for the assumption of the indebtedness of the Old Bank, and its other undertakings thereunder, its note for one million dollars was given; that defendant did assume the indebtedness which was the consideration for the said note; that the same was negotiated to defendant and expressly subjected to the same conditions as

any other Class 'B' assets and particularly with the right of substitution; that the same was taken over in full ownership by defendant as a Class 'A' asset on December 31, 1935, after which time it no longer was subject to the right of substitution and was the absolute property of defendant. In the event the Court should hold that there was any other consideration stated in the contract as written, for the one million dollar note, then the contract in this respect was likewise in error and did not set forth the intention of the parties and should be reformed."

"Respondent further shows that it charged and collected daily, from the complainant, the six per cent on Class 'B' assets termed in the contract 'interest'; that this was done with the knowledge and approval of the Liquidating Committee of the Old Bank and of the Receivers thereof, after the appointment of same; that this was approved by each of them and in the event the Court should hold that the same was 'interest' within the restricted sense of the term and therefore usurious, that this was collected and acquiesced in and no suit was brought to recover the same within two years from the date thereof; that any right to recover the same has perempted or prescribed by the lapse of two years, which term, peremption or prescription is expressly pleaded."

As a counter claim the proposed amendment alleges that plaintiff is due defendant the sum of $101,534.01 up to April 30, 1939, as a reasonable charge for administering Class "C" assets.

The prayer is for the rejection of plaintiff's demands, and in the alternative if the court should find "that the contract as written does not state the rights of the parties as set forth in the foregoing petition (answer), then and in that event it prays that the said contract be' reformed so as to set forth the true contract as hereinabove set out * * *" and for judgment on the counterclaim for the amount alleged.

The proposed amendment, while in effect admitting the facts with respect to the taxes upon real estate, which were used for the benefit of the stockholders of the new bank, it again denies and contests the right of complainant to recover for this item.

Amendment has been vigorously opposed by both complainant and intervenors, who take the position (1) the issue as to the taxes has been foreclosed and settled by the decision of the Court of Appeals; (2) that the allegations with respect to the six per cent interest upon daily balances of Class "B" assets are immaterial for the reason that this issue, too, has been settled by the appellate court, and (3) that the alternative demand for reformation of the contract is likewise barred by the decision of said court in its assertion in the opinion that "if the provision for interest at six per cent on Class B assets was intended to be a service charge, the amount claimed was exorbitant, and equity will not reform a contract in order to substitute an exorbitant charge for a usurious one," [144 F.2d 238], that "there is no basis for estoppel against complainant and intervenors for anything that transpired"; and further, that the plea of prescription is immaterial, "because the decision of the court of Appeals that the (six per cent) 6% charge is void as unconscionable."

The arguments and briefs are miles apart as to the meaning and effect of the decision of the Court of Appeals. Counsel for plaintiff contends that the tax issue has been eliminated by what amounts to the affirmance of this court's ruling that the old bank should not be charged with the taxes upon the real estate, the value of which was used to reduce the taxes of the stockholders of the new bank; that the six per cent upon daily balances of assets, including the note for $1,000,000, should be disallowed in the accounting as usurious and unearned; and that the compensation for the administration of Class "C" assets should be nominal, if not rejected altogether, because of misuse of the trust by defendant.

The concluding paragraph of the opinion of the Court of Appeals upon the application for rehearing, notwithstanding the manner in which the appeal was taken, the assignments of error upon which the reversal was based, the setting aside of the judgment and remanding of the case for a new trial "generally" as "if the former trial had not taken place," it would seem, has informed this court rather clearly what was decided and the matters upon which it is to hear further evidence. That paragraph of the opinion is as follows [145 F.2d 195]:

"* * * We held that savings on taxes obtained by the pledges through use of pledged realty were a fruit of the pledge and belonged to the pledgor; that interest on assets charged against the old bank was usurious and would be disallowed; that appellant is entitled to a reasonable fee for its

services in administering Class C assets if it earned the same by faithful and efficient services; that the cost of administering Class B assets must fall entirely upon the new bank; that the consideration for the one-million-dollar note failed because the pledged assets of the old bank exceeded its liabilities and there was no deficiency-liability of stockholders; that after hearing such additional evidence as may be offered. the district court should make further findings as to what if any compensation should be allowed the new bank for its services and expenses in administering Class C assets; and that the judgment should be reversed and the cause remanded generally for further proceedings not inconsistent with the opinion."

As to the note for $1,000,000, the Court of Appeals appears to have demonstrated beyond question that this claim was contingent and never came into being as a true indebtedness by the old to the new bank, and that it was never intended as such, except in case the other assets in Class "B" proved insufficient to discharge the full amount of the liabilities assumed by the new bank. Admittedly this never occurred. However, as pointed out in the former opinion of this court, it made little difference in the result, either as to principal or interest, if the six per cent on daily balances were to stand, because having given the old bank credit therefor among the cash items or those taken at par, this served to reduce by that much the total of Class "B" assets upon which the interest was to be figured. For illustration, if the note had been for $4,500,000 it would have reduced by approximately one-half the amount upon which the interest on daily balances would have been collected; but this in turn, would have been offset by the same rate of interest on the note for $4,500,000. The result was that the old bank, in the accounting, was charged only with the interest upon the daily balances of total assets in Class "B." But the Court of Appeals stated that since it was admitted on the application for rehearing that "it was not necessary to use a dollar of appellant's (the new bank's) money to satisfy the obligations of the old bank * * *" there was no loan upon which interest could be collected.

■ If holding, that interest upon daily balances of assets of the old bank can not be allowed, is to stand, then the provision for the payment of interest passes out of the contract entirely, both because of its usurious character and the failure of consideration. The contract has been executed, and no one can say, at this time, what would have happened had the old bank and its stockholders declined to assent to the payment of interest in the manner stipulated. In such circumstances, illegal provisions or obligations, based on considerations which never came into existence, should be treated as not written. But, where, as here, the kind of contract which the parties intended, was made, and where the beneficiary of this provision seeks to reform, not because the signed instrument did not mean what it said but because what had been promised was illegal or never had any consideration, the court would not be justified in rewriting the contract to conform to the wishes of one side alone, which has not been consented to by the other, to save the former from loss of what likewise might have been agreed to as proper compensation for services rendered. The inequity of paying additional fees for the administration of Class "B" assets, on top of the stipulation for the six per cent on daily balances, soon became apparent and that provision was eliminated by amendment of the contract, not because of ambiguity, but apparently, because of its injustice. Thus, the parties had full and prompt opportunity to discuss and consider the interest feature and it would seem that something more than allegations of error or the failure to express what was intended by the contract is necessary, at this late date, to justify opening the door to misunderstanding, grievances, and the conduct of parties in sympathy with one side or the other before entering into the agreement. This, I am sure, would prove a veritable Pandora's box. The facts alleged are not sufficient to support the conclusion that there was mistake or error in the terms of the contract, but in view of the manner in which it was executed and the present pleadings, the suggestion appears to be an afterthought. On the other hand, everyone is presumed to act from sufficient motive, that is, the promise or hope of reward. If it happens that what has been promised or hoped for can not for legal reasons be realized, or never came into existence as a consideration for services performed in good faith, it would seem that equity and good conscience would require that a reasonable remuneration should be allowed, unless it is covered by some other consideration under the contract or is barred by misconduct of the claimant. If the six per cent on daily balance is to be

eliminated entirely, then I think the defendant should be permitted to amend its answer to the extent of claiming compensation on a quantum meruit basis for the administration of Class "B" assets in addition to that for Class "C."

I think the tax issue has been settled by the appellate court.

As to whether the elimination of interest on daily balances, including the $1,000,000 note, will or will not benefit the complainant and intervenors, appellees before the Court of Appeals, who took no appeal, this is a matter I prefer to pass on to that tribunal for settlement. I feel that it is my duty to follow what I conceive to be a correct interpretation of that court's direction to this court.

Defendant will be permitted to amend to the extent of claiming compensation on a quantum meruit basis for the administration of Class "B" assets if desired, but the amendments proposed otherwise will be denied.

Proper decree should be presented.